UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ADAM WEINRAUB, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | No. _____<br><br>**COMPLAINT – CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff, Adam Weinraub ("Plaintiff"), brings this action on behalf of himself and all others similarly situated against Defendant, Bank of America, N.A. ("BofA"), for its breach of its duties as professional trustee of a trust containing residential real property. In the course of administering the trust of which Plaintiff is a beneficiary, BofA has engaged in a practice of overcharging the trust by selecting unnecessary and/or excessive insurance for the property. A professional trustee owes fiduciary duties to the beneficiaries of a trust it administers, and BofA's practice violates those duties, resulting in a breach of trust.

## NATURE OF THE ACTION

1. This action is brought on behalf of a class of persons, defined below, who are beneficiaries of trusts that include real property among their assets (the "trust properties") and for which BofA acts as trustee.

2. BofA, which has touted itself as one of the world's largest financial institutions, maintains a substantial business in managing trust assets.

3. When BofA is appointed the trustee of a trust, it assumes a fiduciary duty to administer the trust for the benefit of the trust's beneficiaries.

4. As trustee, BofA manages the residential trust properties by, among other things, purchasing annual property insurance sold by third parties.

5. BofA charges the cost of that property insurance to the trust, depleting the assets of the trust.

6. The insurance products that BofA obtains for its trust properties are unnecessary, excessively expensive, and/or disproportionate to the valuation of the properties BofA used:

   a. The dwelling coverage BofA secures for the trust properties is—by multiples—excessively expensive for the coverage provided compared to the typical dwelling coverage expense for comparable properties of comparable value.

   b. Within the residential-insurance industry, loss of use coverage is typically 10% or 20% of the amount of dwelling coverage, yet BofA secures loss of use coverage for the trust properties that is 5 to 10 times that standard; indeed, BofA secures loss of use coverage that actually *exceeds* the dwelling coverage;

   c. BofA obtains liability insurance for the trust properties in an amount exceeding the value of the trust. Despite that coverage, BofA also secures an additional excess layer of liability insurance for the trust properties. This excess layer of liability insurance is unnecessary and, therefore, comes at an unreasonable cost to the trust.

7. Plaintiff seeks to recover on behalf of the trust of which he is a beneficiary the damages the trust has sustained as a result of BofA's breach of trust in obtaining these excessive and exploitative insurance products. Plaintiff also seeks to recover on behalf of other similarly situated beneficiaries of trusts holding real property as to which BofA has engaged in similar conduct as trustee. Plaintiff also seeks injunctive relief to preclude this unfair practice going forward, plus recompense for the costs of this lawsuit, including reasonable attorney's fees.

8. The allegations of this Complaint are based upon the personal knowledge of Plaintiff as to the trust of which he is a beneficiary, and on information and belief as to all other matters through investigation of Plaintiff's counsel.

## PARTIES

### A. Plaintiff

9. Adam Weinraub, a citizen of the State of California, is a beneficiary of the "Arthur N. Weinraub Trust" (the "Weinraub Trust").

### B. Defendant

10. BofA is a Delaware banking corporation with its principal place of business in Charlotte, North Carolina. As such, it is a citizen of the States of Delaware and North Carolina. It has locations in 40 states and territories in the United States, with Florida ranking third among states in terms of number of BofA locations.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A), because the Class contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a state different from BofA.

12. The Court also has subject matter jurisdiction over Plaintiff's individual claims pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy, excluding fees and costs, exceeds $75,000.

13. BofA transacts substantial business in the United States, including in Florida and this District, transacts business with members of the Class throughout the United States, including in Florida and this District, and has substantial business contacts within the United States, including Florida and this District.

14. The Court has personal jurisdiction over BofA under section 48.193(1)(a), Florida Statutes, because Plaintiff's claims arise from Defendant operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; from BofA committing a tortious act within this state; from BofA contracting to insure properties located within this state at the time of contracting; and from BofA causing injury to persons or property within this state arising out of an act or omission by BofA outside this state while it was engaged in solicitation or service activities within this state.  The Court also has personal jurisdiction under section 736.0202(2)(a), Florida Statutes, by "serv[ing] as trustee of a trust created by a settlor who was a resident of this state at the time of creation of the trust"; and by "[c]ommit[ting] a breach of trust in this state."

15. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (d).  Plaintiff's trust property is located in this District (in Boynton Beach, Florida).  In connection with managing and securing insurance for this property, BofA transacted business, was found, and/or had agents in this District.  A substantial part of the events giving rise to Plaintiff's claims arose in this District, and a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

**GENERAL ALLEGATIONS**

  A.  **Background on BofA's Trust Management Services**

16.  BofA is "the largest provider of personal trust services in the country," managing over $128 billion in personal trust assets. It offers trust and estate management through its Private Bank branch, which manages $607 billion in client balances. The trusts and estates management practice constitutes approximately 21% of the Private Bank branch's business. Approximately 9% of BofA's branches are located in Florida.

17.  BofA obtains some or all of its Master Trust Insurance from a third party, SES Insurance Brokerage Services, Inc. d/b/a SES Risk Solutions ("SES").

18.  SES touts itself as a "consultative partner[] looking to make a difference for financial institutions and real estate investors through collaboration and innovative insurance solutions." SES promises "unique [policy] wording for trust relationships and coverage that contemplates loss for situations that are often unique to trust property."

19.  SES operates as a middleman between financial institutions acting as property managers and trustees on the one hand, and insurance carriers on the other hand, to offer, among other insurance products, a "Master Trust Program." SES's Master Trust Program is a "turnkey" insurance policy package written in the name of the financial institution (like BofA) which includes "Comprehensive coverage for all assets under one single policy, featuring: Property (up to $5 [million] per location), High per location liability limits, Personal property, Time element, Wind, Earthquake, Flood."

20.  When BofA purchases coverage for a trust property through a Master Trust Insurance policy, it purchases coverage for all of the risks insured by the master policy.

21.  BofA professes to lack "control" over which coverages it purchases insurance for within a Master Trust Insurance policy.

22. Disregarding its duties as trustee and fiduciary, BofA fails to conduct appropriate investigation into the insurance needs of trust properties and/or disregards these needs in purchasing insurance products that are unnecessary, exploitative, and/or benefit BofA at the expense of trust beneficiaries.

23. Nor does BofA offer trust beneficiaries the option of locating cheaper, more appropriate insurance coverage for the trust property.

### B.  The Weinraub Trust

24. The Weinraub Trust (the "Trust") was created pursuant to a trust agreement dated May 5, 1999 and made in Virginia and governed by Virginia law.

25. The "Grantor" and "Initial Trustee" of the Trust was Arthur N. Weinraub.  At the time he settled the Trust, he was a Florida resident.

26. The second amendment to the trust agreement, signed by Arthur Weinraub on February 28, 2001, named five beneficiaries of the trust: his fiancée, Barbara Korman, and his four children, one of whom is Plaintiff, Adam Weinraub.

27. The "Trust Estate" consists of "[a]ll items of tangible personal property owned by Arthur Weinraub on the date this [Trust] agreement is signed by him."  A house located at 7692 Lemonwood Street, Boynton Beach, Florida (the "Trust Property") is among the trust assets. Barbara Korman currently resides in the Trust Property.

28. The Trust originally named NationsBank, N.A. as a successor trustee, in the event Arthur Weinraub, the initial trustee, resigned, became incapacitated, or died.

29. The second amendment to the Trust substituted Bank of America, N.A. for NationsBank, N.A. in the trust.

30. Upon Arthur Weinraub's death in 2003, BofA assumed the role of successor trustee. Pursuant to the terms of the trust agreement, BofA was co-trustee with Arthur Weinraub's sister, until 2011, when she died. Since that time, BofA has served as the sole trustee of the Trust.

31. With respect to the trustee's powers, the trust agreement provides as follows:

> In addition to the powers granted by law, I grant my Trustee those powers set forth in Section 64.1-57 of the Code of Virginia, and I incorporate that Code Section in this agreement by this reference. If any asset donated to this trust does not meet the requirements of the prudent investor standard set forth in Section 26-45.1 of such Code, my Trustee may nevertheless retain the asset for so ling as my Trustee may deem appropriate, (specifically including my residence).
>
> \* \* \*
>
> This agreement is made or delivered in Virginia and shall be governed by its laws.

### C. Factual Allegations Specific to the Weinraub Trust

32. In its capacity as trustee of the Trust, BofA manages the Trust Property and obtains insurance for it through SES.

33. According to BofA, the replacement cost value of the house, as of March 2023, was approximately $465,562. As of December 31, 2023, the trust corpus, including the Trust Property, was $716,291.28.

34. The annual account statement for the Trust, which BofA provides to its beneficiaries, is a 34-page document consisting of scores of line items in chronological order.

35. Buried on page 17 of 34 are two entries for property insurance, listing payments for premiums to SES Insurance Brokerage Services on August 28, 2023. One entry says "-19,651" and the other "-92.76."

36. Only upon Plaintiff's inquiry with BofA about these charges did BofA eventually send Plaintiff a document from SES showing the coverages included and insurance premiums for the Trust Property in 2023. It showed the following:

| Property Deductible | Occupied | $1,000.00 | Vacant | $2,500.00 |
|---|---|---|---|---|

| Coverage | Amount of Insurance | Premium |
|---|---|---|
| Dwelling | $465,562 | $19,651.00 |
| Personal Property | $325,893 | Included |
| Loss of Use | $500,000 | Included |
| Liability | $2,000,000 | Included |
| Medical Payments | $10,000 | Included |
| Excess Liability | $25,000,000 | $92.76 |

| Total Premium | $19,743.76 |
|---|---|

37. The document does not disclose what portions of the $19,651 aggregate partial premium are attributable to the various "included" insurance coverages.

38. The document further reflect that the valuation of the Trust Property is based on "replacement cost value."

39. The secondary layer of $25 million of excess liability insurance (for an additional premium of $92.76) is unnecessary and, thus, excessive because the first layer of liability insurance included within the master policy ($2 million) is already more than twice the value of the Trust.

40. On information and belief, BofA unnecessarily purchased the excess liability premium because it covers BofA's *own* potential liability associated with the Trust Property, yet BofA still charged this premium to the trust.

41. One measure of the excessiveness of the base $19,651 premium for the Trust Property in 2023 is by comparison to the insurance premiums for a substantially-similar property located just two doors down within the same development of nearly identical structures.

8

42. The aerial photograph below depicts a red marker on the Trust Property (7692 Lemonwood Street) and a yellow marker on the comparator property two houses to the left (9757 Lemonwood Terrace):



43. The insurance premium for the comparator property for 2023 was just $2,314. Although its coverage varies from the policy that BofA purchased for the Trust Property in some respects that would lower premiums (for instance, the dwelling coverage was only $301,000), the premium—on a dollar-for-dollar-of-coverage basis—is still orders of magnitude lower than—more than 8 times—that which BofA charged the Trust for a comparable property.

44. The property insurance premiums BofA has charged the Trust in prior years were also excessive and/or unnecessary.

## CLASS ALLEGATIONS

45. Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following Class initially defined as follows:

> All beneficiaries of trusts in which BofA served or continues to serve as trustee in which it has, within the applicable statute of limitations, charged the trust for insurance for residential real property held by the trust.

46. Excluded from the Class are BofA, its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies, class counsel and their employees. The Class likewise excludes the judicial officers to whom this case is assigned, their immediate family members and court staff assigned to this case.

### Ascertainability

47. The Class can be readily identified using records in the possession, custody, or control of Defendant BofA and other non-parties like SES.

### Numerosity

48. Because BofA is the self-professed "largest provider of personal trust services in the country" through its Private Bank branch and that branch reportedly gained more than 3,000 new clients in 2023 alone, the estimated number of members in the Class is well over 100 and is great enough that joinder is impracticable.

### Commonality and Predominance

49. There are numerous questions of law and fact, the answers to which are common to the claims of Plaintiff and members of the Class, and those common questions predominate over any questions affecting only individual putative Class members. Common questions include, but are not limited to the following:

a. Whether BofA violated its fiduciary duty as trustee and fiduciary by purchasing Master Trust Insurance policies for the residential trust properties it administers;

b. Whether BofA owes the trusts it administers a fiduciary duty not to overcharge them for real property insurance premiums;

c. Whether BofA exercised good faith or was judicious in purchasing real property insurance during the course of its administration of the trusts;

d. Whether BofA failed to act according to its special skills or expertise or according to reasonable care, skill, and caution when it purchased Master Trust Insurance policies for the residential trust properties it administers;

e. Whether BofA holds itself out as an expert in trust administration;

f. Whether BofA conducted an adequate investigation to determine the insurance needs of the residential trust properties it administers;

g. Whether BofA adequately investigated the cost of comparable insurance through vendors before purchasing insurance;

h. Whether it is reasonable or beneficial to trusts for BofA to purchase a secondary layer of excess liability insurance for a residential trust property held by a trust when the first layer of liability insurance already substantially exceeds the value of the trust; and

i. The appropriate class-wide measure of damages.

**Typicality**

50. Plaintiff's claims are typical of the claims of the Class, as Plaintiff and Class members alike are beneficiaries of trusts managed by BofA as trustee, and they were harmed in

the same way by BofA's breach of trust—by having to pay unnecessary and/or excessive costs to insure the real property held by the trust.

51. Moreover, on the substantive fiduciary duty of trustees to trust beneficiaries, the law is impressively consistent. *See, e.g.,* Eugene F. Scoles, *Choice of Law in Trusts: Uniform Trust Code, Sections 107 and 403*, 67 MO. L. REV. 213, 213 (2002) ("It is perhaps appropriate to start this Article on trusts and conflict of laws by noting that there are only minor differences in the law of trusts among the states of the United States.").

## Adequacy of Representation

52. Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class-action litigation. Plaintiff's interests are coincident with, and not antagonistic to, absent Class members' interests because, by proving his individual claims, he will necessarily prove BofA's liability to the Class. Plaintiff is also cognizant of, and determined to, faithfully discharge his fiduciary duties to the absent Class members as the Class representative.

## Superiority

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens on the Court and BofA and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. Additionally, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous. A multiplicity of individual actions

would also likely increase the expense and time of litigation given the nature of the controversy presented in this Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

## CLAIM FOR RELIEF

### (Breach of Trust)

54. Plaintiff incorporates by reference paragraphs 1-53 of the foregoing allegations of this Complaint and further alleges:

55. BofA, as trustee, owes a fiduciary duty to the trusts it administers.

56. BofA, as an expert trustee, owes a standard of care of a trustee with special skills or expertise. Alternatively, BofA owes a standard of care of a prudent person exercising reasonable care, skill, and caution expected of a person dealing with his own property.

57. The Dwelling Coverage that BofA purchases for the trust properties is—by multiples—excessively expensive for the coverage provided compared to the typical Dwelling Coverage expense for comparable properties.

58. BofA's purchase of an excess layer of liability insurance coverage for trust properties that are already adequately covered by a primary layer of liability insurance through BofA's Master Trust Insurance policy constitutes a breach of trust.

59. Specifically, BofA's acts constituted a breach of trust in one or more ways, including but not limited to the following:

    a)    Failing to ascertain the best possible coverage and price for the insurance products applicable to the residential trust properties for which it is responsible;

    b)    Purchasing a generic, one-size-fits-all insurance policy for the residential trust properties it manages that includes dwelling coverage that is excessively expensive compared to the typical dwelling coverage expense for comparable properties;

    c)    Purchasing excess liability coverage for the residential trust properties it administers, at an additional cost which is unnecessary to protect the interests of the trust and its beneficiaries;

    d)    Failing to give beneficiaries the option not to purchase an excess layer of liability insurance; and/or

    e)    Failing to give beneficiaries the option of locating less expensive property insurance for the trust property.

60. Based on the foregoing, BofA's actions have caused or are likely to cause substantial injury to beneficiaries.

61. As a result of BofA's practices, Plaintiff and the Class members have been aggrieved and have suffered, or will suffer, actual damages resulting from the diminution of the value of the trusts of which they are beneficiaries.

62. Plaintiff and the Class members are entitled to actual damages and all other allowable relief, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

63. Plaintiff and the Class members are entitled to injunctive relief to prevent BofA from engaging in the same practices with regard to BofA's purchase of insurance for residential trust properties in the future.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, requests the following relief:

    a. that the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

    b. certification of the proposed Class;

    c. appointment of the Plaintiff as representative of the Class;

    d. appointment of undersigned counsel as counsel for the Class;

    e. an order enjoining BofA, as provided by law, from engaging any further conduct in breach of trust set forth herein;

    f. an award to the Class of any monies paid pursuant to the alleged conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs; and

    g. an award of such other relief as the Court may deem just and proper.

Dated: July 3, 2024

Respectfully submitted,

/s/ *Stephen F. Rosenthal*

| | |
|---|---|
| John G. Crabtree | Stephen F. Rosenthal |
| Charles M. Auslander | Florida Bar No. 0131458 |
| Brian Tackenberg | srosenthal@podhurst.com |
| CRABTREE & AUSLANDER, LLC | Christina H. Martinez |
| 240 Crandon Boulevard | Florida Bar No. 1029432 |
| Suite 101 | cmartinez@podhurst.com |
| Key Biscayne, Florida 33149 | PODHURST ORSECK, P.A. |
| Tel: (305) 361-3770 | One S.E. 3rd Avenue, Suite 2300 |
| jcrabtree@crabtreelaw.com | Miami, Florida 33131 |
| causlander@crabtreelaw.com | Tel.: 305-358-2800 |
| btackenberg@crabtreelaw.com | |
| floridaservice@crabtreelaw.com | |

*Attorneys for Plaintiff*